## UNITED STATES v. FRANKFELD et al.

### No. 22209.

United States District Court
D. Maryland, Criminal Division.
Oct. 22, 1951.
Supplemental Opinion Oct. 31, 1951.

Bernard J. Flynn, U. S. Atty., Baltimore, Md., for plaintiff.

R. Palmer Ingram, of Baltimore, Md., for Dorothy Blumberg.

Philip Frankfeld, in pro. per.

Harold Buchman, Baltimore, Md., for George A. Meyers, Maurice L. Braverman, Leroy H. Wood and Regina Frankfeld.

Joseph Forer, Washington, D. C., for Leroy H. Wood and Regina Frankfeld.

CHESNUT, District Judge.

On August 14, 1951 the defendants in the above case were indicted by the Grand Jury under 18 U.S.C.A. § 371 for conspiracy to violate a federal statute, the Smith Act, 18 U.S.C.A. § 2385. On September 28th all the defendants except Dorothy Rose Blumberg filed a motion for the suppression of evidence. The evidence to which the motion related was only very generally described as (1) all records of any kind made of or reflecting intercepted telephone communications of the defendants or attorneys at law who have appeared for them; (2) all other persons whose telephone conversations were intercepted by tapping of telephones of the homes or offices of the defendants and such attorneys; (3) suppressing all evidence obtained as the result or by the use of such intercepted telephone communications. The motion also applied for an order directing the United States (1) to turn over to the defendants or their attorneys all such records, and the names, addresses and official title of all employees and agents of the United States who participated in such interception and (2) to turn over all records and notes of matters obtained by intercepted mail matter addressed to the defendants, and (3) directing the United States to turn over to the defendants any microphone discs, records, transcripts and notes and memoranda containing or referring to conversations recorded by microphone installed in the homes or offices of the defendants or their attorneys at law. The motion also asked an order setting a hearing to determine what evidence has been obtained by such alleged illegal means and dismissing the indictment in the event it appears that the indictment was obtained on evidence illegally secured. A date for a hearing on this motion was set for October 3rd and in advance thereof counsel for the defendants, acting under Rule 17(a) of the Federal Rules of Criminal Procedure, 18 U.S.C.A., obtained from the clerk of the court blank subpoenas in which the counsel filled in the names respectively of J. Howard McGrath, Attorney General of the United States, J. Edgar Hoover, Director of the Federal Bureau of Investigation, C. W. Stine and S. C. Alden, Special Agents of the Federal Bureau of Investigation, and Edward G. Gough of the Federal Bureau of Investigation at Baltimore. These subpoenas were served by an individual who left a copy thereof respectively at the office of each of the officials named. The subpoenas to the witnesses directed them to bring with them records and papers and communications alleged to be in the files of the Government. Pending the hearing on the motion the witnesses presented a petition by the United States for the District of Maryland to suppress the subpoenas and relieve the above named officials from appearing at the time set out in the subpoenas. On this petition the court passed an order relieving the witnesses from appearing on the date mentioned "pending the hearing on the motion".

In support of the motion each of the moving defendants filed an affidavit stating circumstances from which they concluded that on several occasions just prior to or after the finding of the indictment some of them had been followed by persons whom they thought to be agents of the F.B.I., from which the defendants inferred that the ability of the agents to keep track of them at particular times and places must have been due to the interception of telephone messages recently made by them in which they had made appointments for seeing other persons at particular places at particular times. The affidavit of Philip Frankfeld also stated circumstances from which it was concluded or thought to be inferred that their mail had been opened before delivery. Neither the motion nor any of the affidavits stated or referred to any specific conversation or information which it was thought by the witnesses was overheard or learned by the alleged interception of telephone or mailed messages. That is to say, neither the motion nor the affidavits specified any particular possible evidence anticipated to be offered as evidence against the defendants or any of them at the trial of the case which had been set for November 26 next.

At the hearing the United States Attorney filed an affidavit of more than four typewritten pages which in substance stated

that no evidence would be offered at the trial of the case by the Government consisting of, based on or obtained from intercepted telephone messages or conversations of any of the defendants and the affidavit further set forth eleven separate classes of evidence which would be offered which consisted principally of oral testimony of witnesses directly relating to the defendants and not based on or derived from wire-tapping, and documentary evidence, none of which, as stated in the affidavit, could possibly have been based on or derived directly or indirectly from intercepted messages.

The question now presented is whether the court should at this time and in advance of the trial conduct a preliminary or pre-trial hearing to determine what, if any, evidence should be excluded consisting of or resulting from intercepted telephone communications. The question as to interception of mail has not been much pressed by defendants' counsel. It is to be noted that the court does not now have before it any definite or specific subject matter in the nature of evidence sought to be suppressed. The defendants' motion and affidavit does not allege that there is in fact any evidence whatever that will be offered by the Government based on intercepted telephone messages. What the defendants apparently desire at this time is a preliminary trial for the purpose of discovery as to whether the Government has or intends to offer any such evidence. The affidavit of the United States Attorney specifically denies that there is any such evidence to be offered. In this situation the question is whether the defendants are entitled to invoke the aid of the court in holding a preliminary trial for the purposes of discovery. In federal civil practice the new rules of procedure amply provide for discovery by depositions, interrogatories, orders for inspection of physical things or documents, and otherwise. There is also provision for pre-trial conferences of counsel to settle issues, stipulate facts and otherwise limit the duration of a subsequent trial. It has, however, not been customary to adduce evidence at such pre-trial conferences or hearings. There is no similar rule for criminal procedure either as to discovery or pre-trial conference. I recall that the first draft of the new criminal procedure rules formulated by the Advisory Committee appointed by the Supreme Court did recommend a provision for pre-trial conference in criminal cases, but there was strenuous opposition to it from the Bar and it was withdrawn or at least not approved by the Supreme Court.

However, in some recent federal criminal cases a preliminary hearing has been held with respect to contentions raised by the defendant that certain evidence should be suppressed by the court on the ground that it consisted of or resulted from intercepted telephone communications by the defendant. Such a hearing has recently been referred to by the Court of Appeals of the District of Columbia as the "Nardone" hearings. Coplon v. United States, D.C.Cir., 191 F.2d 749. But, so far as I have observed, such preliminary hearings have related to particular and more or less definite evidence sought to be suppressed. It may be convenient here to briefly summarize the development of the so-called Nardone hearings in recent cases.

In Olmstead v. United States, 277 U.S. 438, 48 S.Ct. 564, 72 L.Ed. 944, it was held by the Supreme Court in an elaborate opinion by Chief Justice Taft that evidence obtained by federal agents by the tapping of telephone wires was admissible in evidence in the federal courts as it was consistent with the rules of common law, and was not prohibited constitutionally by the 4th or 5th Amendments. At page 468 of 277 U.S., at page 569 of 48 S.Ct. it was said: "A standard which would forbid the reception of evidence, if obtained by other than nice ethical conduct by government officials, would make society suffer and give criminals greater immunity than has been known heretofore. In the absence of controlling legislation by Congress, those who realize the difficulties in bringing offenders to justice may well deem it wise that the exclusion of evidence should be confined to cases where rights under the Constitution would be violated by admitting it." Four Justices dissented. In the dissent by Mr. Justice Holmes there was the sentence:

"We have to choose, and for my part I think it a less evil that some criminals should escape than that the government should play an ignoble part." Mr. Justice Taft in his opinion for the majority of the court also pointed out that, if Congress deemed it advisable, it could pass legislation with regard to the admissibilty of such evidence in federal courts.

In 1934 Congress, in revising former interstate communications by wire, including telephones, provided in 47 U.S.C.A. § 605 that—"no person not being authorized by the sender shall intercept any communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person * * *." And by section 501 of title 47 a wilful and knowing violation of section 605 is made punishable by fine or imprisonment or both. It will be noted that this statute did not expressly forbid the use of such intercepted wire messages as evidence in federal courts; and in the first Nardone case the Court of Appeals for the Second Circuit unanimously held that, as the statute had not expressly prohibited the use of such evidence, it was admissible in the federal courts, United States v. Nardone, 90 F.2d 630; but the Supreme Court reversed, 302 U.S. 379, 58 S.Ct. 275, 82 L. Ed. 314 holding, on its construction of the statute, that such evidence was inadmissible. On appeal from the defendant's conviction in the second trial of the case the Court of Appeals for the Second Circuit, 106 F.2d 41, held that all that was prohibited by the statute was only evidence of what was said in the intercepted telephone message and not also other evidence resulting from "leads" given thereby. But the Supreme Court again reversed, 308 U.S. 338, 60 S. Ct. 266, 84 L.Ed. 307; and in Weiss v. United States, 308 U.S. 321, 60 S.Ct. 269, 84 L.Ed. 298, the Supreme Court held by its construction of the statute that the prohibition applied to intrastate as well as interstate and foreign communications where the intrastate wire was used in connection with interstate wires.

In Goldstein v. United States, 316 U.S. 114, 62 S.Ct. 1000, 86 L.Ed. 1312, the Supreme Court held that the interception by federal officials of telephone communications, to which the defendant was not a party but the communication of which to others induced them to testify, did not make their testimony inadmissible; and in Goldman v. United States, 316 U.S. 129, 62 S.Ct. 993, 86 L.Ed. 1322, the court held recordings made by a detectograph placed against the wall of a room adjoining the business office, whereby a telephone conversation by the defendant in his office was learned, was not inadmissible in evidence against him under secton 605.

In the second Nardone case, 308 U.S. 338, 341, 60 S.Ct. 266, 268, it was said: "Dispatch in the trial of criminal causes is essential in bringing crime to book. Therefore, timely steps must be taken to secure judicial determination of claims of illegality on the part of agents of the Government in obtaining testimony. To interrupt the course of the trial for such auxiliary inquiries impedes the momentum of the main proceeding and breaks the continuity of the jury's attention. Like mischief would result were tenuous claims sufficient to justify the trial court's indulgence of inquiry into the legitimacy of evidence in the Government's possession. * * * Therefore claims that taint attaches to any portion of the Government's case must satisfy the trial court with their solidity and not be merely a means of eliciting what is in the Government's possession before its submission to the jury. And if such a claim is made after the trial is under way, the judge must likewise be satisfied that the accused could not at an earlier stage have had adequate knowledge to make his claim. The civilized conduct of criminal trials cannot be confined within mechanical rules. It necessarily demands the authority of limited direction entrusted to the judge presiding in federal trials, including a well-established range of judicial discretion, subject to appropriate review on appeal, in ruling upon preliminary questions of fact. Such a system as ours must, within the limits here indicated, rely on the learning, good sense, fairness and courage of federal trial judges."

The practice of holding hearings, prior and preliminary to the actual trial, with re-

spect to claims of the defendants to suppress intercepted telephone messages has been recognized and impliedly approved in a number of recent cases in federal appellate and district courts. See Goldstein v. United States, 316 U.S. 114, 115, 62 S.Ct. 1000, 86 L.Ed. 1312; United States v. Coplon, 2 Cir., 185 F.2d 629; Coplon v. United States, D.C.Cir., supra; United States v. Pillon, D.C., 36 F.Supp. 567; United States v. Weiss, D.C., 34 F.Supp. 99. This practice is quite analogous to what has long been customary with respect to motions to suppress evidence obtained by federal officials in alleged violation of the Fourth Amendment. The purpose of such preliminary hearings is to avoid delay in the actual trial of the case by interrupting its orderly progress to determine the preliminary and incidental question of admissibility of evidence before its submisson to the jury. Where the nature of the evidence attacked by a preliminary motion is obviously such that the determination of the admissibilty of the evidence could not cause substantial delay in the progress of a trial, it is not necessary to hold a preliminary hearing, but in that event of course the defendant must be given a reasonable opportunity and time to develop objection at the actual trial before the determination of the admissibility of the questioned evidence. As I understand the opinion in the Nardone case above quoted, the matter is necessarily largely left to the discretion of the trial judge.

▇ In the instant case, after considering the affidavits of the defendants, and of the United States Attorney in opposition thereto, it is my judgment that no useful purpose would now be subserved by hearing the defendants' motion to suppress evidence of intercepted telephone communications, either the original messages or other evidence clearly derived therefrom, because there is an entire lack of definiteness in the defendants' motion as to what, if any, particular messages were intercepted, and the affidavit of the United States Attorney is explicit and definite that no such evidence will be offered at the trial. In this situation it seems to me that the present effort of the defendants to examine government officials is merely an effort to discover what may be the government's evidence in the case. While I find that the defendants' present motion to suppress must be overruled, the order to that effect will be without prejudice to any motion which may be filed by the defendants hereafter and before or at the trial, if based on facts with regard to some particular intercepted message. I am not satisfied at the present time of the existence of such fact.

It is therefore Ordered that the defendants' present motion to suppress evidence of or derived from intercepted telephone communications be and the same is hereby overruled.

### Supplemental Opinion.

Five of the above defendants have filed a motion to re-consider, or, in the alternative, to modify the opinion of the court filed October 22nd last overruling the defendants' then present motion to suppress evidence of or derived from intercepted telephone communications. It is now contended (1) that the court failed to consider certain aspects of the defendants' motion and (2) certain objections are made to two sentences in the opinion.

With respect to the first, the three points now again made were not overlooked by the court and the motion to re-consider the opinion and order as a whole is overruled.

With respect to modification of the opinion, attention is called to the sentence in the opinion, 100 F.Supp. 935, reading as follows: "These subpoenas were served by an individual who left a copy thereof respectively at the office of each of the officials named." In the motion it is now pointed out by counsel that the subpoenas were in fact served by Deputy Marshals and not by unofficial individuals. The matter is unimportant because service by an unofficial individual is authorized by rule 17(d) of the Federal Rules of Criminal Procedure, 18 U.S.C.A. The matter was heard by the court on October 4th on a petition filed by the United States Attorney on behalf of the witnesses named in the subpoenas. In the petition it was stated that the subpoenas "were served by an individual who left a copy of the subpoenas at the office of each of these officials". No

answer was filed to the petition to suppress the subpoenas and I do not recall that counsel for the defendants at the hearing on the petition controverted the statement in the petition, and my attention was not at the time called to the official returns on the subpoenas which when now examined show that the service was made by officials and not by an un-official individual. I am, of course, glad to correct the inadvertent mistake which, however, is unimportant; and will strike out the sentence in the opinion.

The defendants complain of the sentence in the opinion, 100 F.Supp. 938, reading as follows: "In this situation it seems to me that the present effort of the defendants to examine government officials is merely an effort to discover what may be the government's evidence in the case." The defendants interpret this sentence as a "slur" on the sincerity of their purpose in making the motion to suppress evidence thought to be the result of intercepted telephone messages. As that was not intended, the sentence can and will be eliminated from the opinion.

The defendants also contend that the order overruling their motion should also have ordered the suppression of the subpoenas to witnesses, and if that is done it will be a denial of their constitutional right to summon witnesses for their defense, and should be made a part of the record for further consideration if desired. In this respect the defendants have apparently failed to note the significance of what is said on the last page of the opinion reading: "While I find that the defendants' present motion to suppress must be overruled, the order to that effect will be without prejudice to any motions which may be filed by the defendants hereafter and before or at the trial, if based on facts with regard to some particular intercepted message. I am not satisfied at the present time of the existence of such fact."

 The purpose of the opinion was to explain to counsel why the court did not think the showing made in support of the motion warranted a preliminary or so-called Nardone hearing prior to the trial. It was, of course, not intended to suppress generally or indefinitely subpoenas for any witnesses within the process of the court that the defendants may summon on their behalf. The particular subpoenas may, therefore, be re-instituted to bring the witnesses to the court at the beginning or any later stage of the trial of the case as determined by the defendants, to give such evidence as may be found relevant to the case. I have not overlooked the opinion of the Second Circuit reported in United States v. Coplon, 185 F.2d 629, 631, 636, much relied upon by counsel. It is to be noted that in that case 185 F.2d at page 631, the wire tapping referred to was "conceded" to have been made. As stated in the opinion here, I am not satisfied that tapping of the defendants' telephone wires has yet been shown with sufficient clarity or definiteness to warrant the holding of a pre-trial hearing upon the subject, although of course if such a preliminary hearing is not held it may possibly require some necessary temporary interruption of the trial itself in order to give the defendants ample opportunity to establish the fact if they can. The burden of proof is on the defendant to show it and for the purpose of doing so the particular witnesses whom they desired can be subpoenaed to attend the trial of the case.