**FERRACANE v. UNITED STATES, and four other cases.**

Circuit Court of Appeals, Seventh Circuit.
December 4, 1928.

Nos. 4021–4025.

Ira M. Holmes, of Indianapolis, Ind., for plaintiffs in error Ferracane, Gay, and Felthouse.

Matt J. Holt, of Louisville, Ky., for plaintiff in error Stabile.

Albert Ward and Alexander G. Cavins, both of Indianapolis, Ind., for the United States.

Before ALSCHULER, PAGE, and ANDERSON, Circuit Judges.

692

ANDERSON, Circuit Judge. The above-named plaintiffs in error, together with 94 other persons, were charged with a conspiracy to violate the Prohibition Law in an indictment returned September 24, 1927. They were adjudged guilty, and each sued out a separate writ of error. Their cases were presented in one record and will be disposed of together.

Ferracane raises but one question. He pleaded a former conviction for the same offense and asked that the question raised by the plea be submitted to the jury, which was done under instructions requested by him. The jury rejected his plea and found him guilty. The denial of his plea is the only thing complained of by him.

Gay, Felthouse, and Stabile complain that the court erred in denying their motions for directed verdict, insisting now, as then, that there was not sufficient evidence before the jury to warrant a verdict of guilty. Calandrino filed no brief and made no appearance in this court.

Ferracane, with 55 other persons, had been charged in a previous indictment, returned on March 5, 1927, with conspiracy to violate the Prohibition Law. On that day he pleaded guilty to that indictment, and on May 9 following he was sentenced to be fined and to be imprisoned in the county jail.

Upon the trial in the case at bar, he introduced the record showing the former indictment and his conviction thereon, and the testimony of a witness that the Tony Ferracane in the indictment on trial was the same Ferracane mentioned in the former indictment, and that 4 of the other 98 defendants in this indictment were likewise named as conspirators in the former indictment.

To sustain a plea of former conviction it must be made to appear that the offense for which he was convicted in the first case is the same offense with which he is charged in the second. The test is whether the evidence necessary to support the second indictment would have been sufficient to ground a legal conviction upon under the first. With the exception of Ferracane and 4 others, the persons alleged to have entered into the unlawful partnerships were not the same; the times covered by the two indictments, though overlapping, were not the same; and the overt acts charged in the second indictment were not the overt acts charged in the first.

To make a case under the conspiracy statute (18 USCA § 88) there must be both the unlawful agreement and an act to effect the object of it; that is, an overt act. The Supreme Court has decided that such an act is an essential ingredient of the offense; that the constitutional guaranty that "the accused shall enjoy the right of a speedy and public trial by an impartial jury of the state and district wherein the crime shall have been committed" is satisfied by a trial in the district wherein an overt act was committed, without regard to whether the unlawful agreement was made in that district or to whether the accused was there present; that where a conspiracy is formed in one district, and an overt act is committed in another, the statute providing that when an offense is begun in one district and completed in another, it shall be deemed to have been committed in either, applies; and that a conspiracy may be continuous, and, if it was designed to be and was continuous, every overt act was the act of all the conspirators by reason of the terms of their unlawful plot. Hyde v. United States, 225 U. S. 347, 32 S. Ct. 793, 56 L. Ed. 1114, Ann. Cas. 1914A, 614; Brown v. Elliott and Moore v. Elliott, 225 U. S. 392, 32 S. Ct. 812, 56 L. Ed. 1136.

The overt acts alleged in the second indictment being entirely different from those alleged in the first, proof of these acts, or any one of them, averred in the second would not support a conviction under the first. This precise point was decided by the Circuit Court of Appeals for the First Circuit in the case of Henry v. United States, 15 F.(2d) 365.

Again, the evidence shows that Ferracane pleaded guilty to the indictment in the first case on March 5, 1927; that he was sentenced on May 9, 1927, to be imprisoned for that offense, and began serving the sentence of imprisonment May 16; and that on May 14 he delivered and sold to one of his co-conspirators, at the residence of the latter in Indianapolis, five gallons of intoxicating liquor. Evidence that he delivered it is evidence that he transported it.

This transportation and sale occurred after the time covered by the first indictment, after his plea of guilty and sentence upon the first, and within the time alleged in the second. The act of Ferracane of May 14 renewed or continued the conspiracy in which he was then engaged. It was active participation by him in the unlawful plot alleged, and it would be a perversion of the guaranty against double jeopardy to permit him, by this plea, to escape the consequences of his criminal acts committed after his former conviction.

The contention of Gay, Felthouse, and Stabile, that the evidence was not sufficient

to go to the jury, is without merit. There was ample evidence before the jury to warrant the finding of the existence of the conspiracy alleged in the indictment. Indeed, Gay, Felthouse, and Stabile do not contest this. Their contention is that there was no evidence to show that they participated in the conspiracy, and this because they were not shown to have been parties to the formation of the unlawful plot, or to have joined in it after its formation, or to have committed an overt act "in Indiana."

Putting out of view for a moment the question of venue, there was abundant evidence to show that they participated in an unlawful conspiracy to transport liquor. Conspirators, who had confessed to their own unlawful participation in the conspiracy alleged, testified that they had transported from Chicago, through Indiana, into Kentucky, and to the residences of Gay and Stabile, and to the farm of Felthouse, large quantities of intoxicating liquor; that upon arrangements with, and under directions of, Gay and Stabile, the liquors delivered to them were further transported to places designated by them, and the liquors going to Felthouse were delivered—that is, transported—to his farm. There was also abundant evidence upon which to find that their receiving this liquor, directing its further transportation, and their payment for it, were all in accordance with a previous understanding with persons transporting and selling the liquors to them.

There was therefore evidence sufficient to warrant the finding that they were guilty of entering into and participating in a conspiracy to commit an offense against the United States—that is, transporting liquor unlawfully—at least in Kentucky, and their contention that they did nothing themselves in Indiana is without merit. Hyde v. United States; Brown v. Elliott and Moore v. Elliott, supra.

■ And the fact that they were not physically present in Indiana, and therefore took no part in the commission of the overt acts shown to have been committed there, was without consequence. The acts of their confederates done in Indiana were their acts by reason of their unlawful plot. Brown v. Elliott, supra. His counsel says that Stabile did not know or care where the liquor came from—did not know it was coming from Indiana. If this were material, there is evidence to warrant the inference that they all knew it. Witnesses testified that they brought liquors to these plaintiffs in error through Indiana, and that in several instances, when coming with truck loads of liquor, they telephoned from places in Indiana, telling the parties in Louisville when they would arrive with the goods.

Calandrino seems to have abandoned his writ of error. There is abundant evidence in the record to warrant the jury in finding him guilty.

The judgments are all affirmed.

ALSCHULER, Circuit Judge. I concur in the opinion, except so much of it as expresses approval of the rule announced in Henry v. United States (C. C. A.) 15 F.(2d) 365. It is there stated: "As no overt act alleged in 6401 was set up in No. 6610, it is plain that the two indictments were for legally different crimes." Such a rule, announced as it is without any qualification, would justify two convictions of the same defendant for the same conspiracy, if only different overt acts were alleged in the two indictments, and even if all the overt acts stated in the two indictments were shown in evidence, as properly they might be, on each trial; or there might be as many separate convictions of the same defendants for the same conspiracy as it might please the prosecutor to embody in several indictments therefor, or in different counts of the same indictment, if only he is careful to allege in each indictment or count, and to prove as alleged, an overt act not alleged in the other indictments or counts.

While the overt act is an essential element of the statutory offense, the unlawful agreement is, after all, the real gist of the offending, the doing of an overt act marking the limit for repentance, or abandonment of the unlawful undertaking, and to that extent ameliorating the former general rule that the unlawful agreement alone was sufficient. That each separate nod, gesture, or other act done in execution of the same unlawful agreement to commit an offense, may subject the alleged conspirators to several convictions and punishments is, to my mind, untenable. Ferracane's conviction is sustainable without resort to doctrine so dangerous, and, in my judgment, so unsound.